IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 24-20073-01-DDC |
| v. | |
| JUNJIE ZHANG (01) <br> a.k.a. JEFF ZHANG, | |
| Defendant. | |

### MEMORANDUM AND ORDER

An Assistant United States Attorney sent defendant Junjie Zhang a target letter, informing him that the government had collected sufficient evidence to prosecute him for violating federal export-control laws. The target letter suggested that Mr. Zhang hire counsel. He did so, and Mr. Zhang's counsel communicated with the government for several months about resolving the matter—including late-breaking child pornography charges. But nothing happened for four years, until a grand jury indicted Mr. Zhang on the child pornography charges in this case. Law enforcement agents arrested Mr. Zhang and took him to a nearby FBI office.

Agents then read Mr. Zhang his *Miranda* rights. Mr. Zhang—despite having retained counsel earlier and despite agents informing him of his Sixth Amendment right to counsel—signed a *Miranda* waiver and then proceeded to answer agents' questions. Mr. Zhang now has filed a Motion to Suppress (Doc. 33) his incriminating answers. He argues that he retained counsel at the government's suggestion, and the government knew he'd retained counsel years earlier, rendering his waiver invalid.

The court denies the motion. The Supreme Court once held that law enforcement agents can't approach a represented defendant and ask him to waive his rights, but that's no longer the law. The court declines to resurrect this rule from the dead. The court also rejects Mr. Zhang's argument that the agents badgered him into waiving his rights.

The court explains these conclusions, below.

I.    Background

The court conducted an evidentiary hearing on September 10, 2025. The court derives the following factual findings from the evidence presented during that hearing.

In September 2019, United States Customs and Border Patrol stopped Junjie Zhang before he boarded a flight to China. CBP reviewed Mr. Zhang's flash drive and computer and found export-controlled material, so agents seized the items. A few days later, the FBI executed a search warrant at Mr. Zhang's home in Wichita. The warrant authorized agents to search for evidence about Mr. Zhang's purportedly false statements to CBP and theft of trade secrets. Agents seized a bunch of electronics. Mr. Zhang agreed to talk with the FBI and provided them with some information.

In February 2020, two FBI agents delivered Mr. Zhang a letter from Assistant United States Attorney Tony Mattivi. Def. Ex. 1. The letter—called a target letter—alleged that Mr. Zhang had violated the Export Control Reform Act. *Id.* Because Mr. Zhang had cooperated with the government so far, the target letter offered to resolve the matter before indictment. *Id.* The target letter also suggested that Mr. Zhang retain an attorney. *Id.* The FBI agents themselves also suggested Mr. Zhang hire an attorney, Def. Ex. 9, so he retained James Pratt.

Mr. Pratt promptly emailed Mr. Mattivi, notifying him that Mr. Zhang had retained him as his counsel. Def. Ex. 2. Mr. Mattivi and Mr. Pratt participated in several calls. During those calls, Mr. Pratt learned that the government had found suspected child pornography on one of

2

Mr. Zhang's seized devices.  Mr. Pratt asked Mr. Mattivi who would handle the child pornography issue.  Def. Ex. 3.  Mr. Mattivi responded, saying that no other AUSA had become involved yet and he continued to talk to Mr. Pratt about both the Export Control Reform Act and the child pornography issues.  *Id.*

In late April 2020, Mr. Mattivi told Mr. Pratt that the government had begun drafting a complaint and he'd send it to Mr. Pratt as soon as possible.  Def. Ex. 4.  On the child pornography issues, Mr. Mattivi said, "No movement on the CP side that I know of.  Frankly, my hope is that we can come to an agreement that includes a plea to the national security charge and no CP charge.  But we'll cross that bridge when we come to it."  *Id.*  Mr. Mattivi sent Mr. Pratt a draft Complaint on May 28, 2020.  A few months later, Mr. Mattivi called Mr. Pratt to tell him that he was leaving the United States Attorney's Office, and his successor would get in touch with Mr. Pratt in the future.

The government then went dark.

On August 21, 2024—more than four years later—a grand jury indicted Mr. Zhang on one count of possession of child pornography.  Doc. 1.  On October 3, 2024, FBI agents arrested Mr. Zhang at his apartment in Broken Arrow, Oklahoma.  The FBI agent who testified at the hearing, Agent Tyler Rempel, first contacted Mr. Zhang outside of his apartment, in a parking lot.  Mr. Zhang maintains, and the government does not challenge, that Mr. Pratt still represented him when he was arrested.  Indeed, Mr. Rempel testified that he reviewed, when he first got involved in the case, the case file and learned that Mr. Zhang had retained Mr. Pratt.  Mr. Rempel later testified that he didn't know for certain whether Mr. Pratt still represented Mr. Zhang, however.  Mr. Zhang nonetheless gave written consent for agents to search his apartment

and backpack. Agents then took Mr. Zhang to the Tulsa FBI office for a custodial interview. While there, Mr. Zhang signed consent-to-search forms for his cellphones and work laptop.

Mr. Zhang also signed a form advising him of his *Miranda* rights and explicitly waiving those rights. It provided:

**ADVICE OF RIGHTS**

**LOCATION**

Place: Tulsa LA   Date: 10/3/2024   Time: 9:07

**YOUR RIGHTS**

Before we ask you any questions, you must understand your rights.

You have the right to remain silent.

Anything you say can be used against you in court.

You have the right to talk to a lawyer for advice before we ask you any questions.

You have the right to have a lawyer with you during the questioning.

If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time.

**CONSENT**

I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present.

Signed [signature]

Gov. Ex. 2. FBI agents then questioned Mr. Zhang. Mr. Rempel testified that, during their nearly two-hour conversation, Mr. Zhang never exercised any of the rights outlined on the form. During the interview, Mr. Zhang made incriminating statements.

Mr. Zhang now has moved to suppress his statements from the October 3 interview. Doc. 33. He argues that the FBI agents violated his rights. They questioned him even though he had

4

retained counsel—at the government's suggestion—and his counsel had communicated with the government.

## II.      Analysis

The "Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings." *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009). Pretrial interrogation qualifies as a critical stage of criminal proceedings. *Id.* And "the prosecutor and police have an affirmative obligation not to act in a manner that circumvents and thereby dilutes the protection afforded by the right to counsel." *Maine v. Moulton*, 474 U.S. 159, 171 (1985).

A defendant can waive his Sixth Amendment right to counsel. *Montejo*, 556 U.S. at 786. The defendant must waive this right voluntarily, knowingly, and intelligently. *Id.* And a "defendant may waive the right whether or not he is already represented by counsel; the decision to waive need not itself be counseled." *Id.* "And when a defendant is read his *Miranda* rights (which include the right to have counsel present during interrogation) and agrees to waive those rights, that typically does the trick[.]" *Id.*

Mr. Zhang argues that the government violated his Sixth Amendment rights when it interrogated him after his arrest without his attorney present. Recognizing the obvious problem—his waiver of those rights—Mr. Zhang propounds two theories to invalidate his waiver. His motion first argues that, under the unique circumstances of this case, the government illegally circumvented the Sixth Amendment. His supplemental filing then argues that the police illegally badgered him into signing away his rights, violating *Edwards v. Arizona*, 451 U.S. 477 (1981), so the court should presume the waiver invalid. As explained below, neither theory succeeds.

### A.      Circumvention & Coercion

Mr. Zhang first argues that the FBI agents "made an end run around" the Sixth Amendment by ignoring his prior invocation of counsel and interrogating him. Doc. 33 at 1. Mr. Zhang calls the agents' request to waive his right to counsel "coercive." *Id.* at 7. He contends that the agents knew he had asserted his right to counsel previously and yet they requested the waiver anyway, rendering Mr. Zhang's rights "meaningless." *Id.*

The Supreme Court once held that "if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid." *Michigan v. Jackson*, 475 U.S. 625, 636 (1986). But the Court later overruled *Jackson*'s bright-line rule in *Montejo*, 556 U.S. at 797. In overruling *Jackson*, the Court concluded that other cases protect defendants from police badgering them to waive their right to counsel involuntarily.

Those cases are *Miranda v. Arizona*, *Edwards v. Arizona*, and *Minnick v. Mississippi*. *Miranda* requires a prophylactic warning, advising anyone interrogated while in custody that he has the right to an attorney and protecting defendants from self-incrimination in the face of police badgering. 384 U.S. 436, 474 (1966). *Edwards* gives force to these *Miranda* rights. 451 U.S. 477. It held that once a defendant has "expressed his desire to deal with the police only through counsel, [he] is not subject to further interrogation by the authorities until counsel has been made available[.]" *Id.* at 484–85. And so *Edwards* "prevent[s] police from badgering a defendant into waiving his previously asserted *Miranda* rights." *Michigan v. Harvey*, 494 U.S. 344, 350 (1990). *Minnick* holds that once a defendant requests counsel, "interrogation must cease, and officials may not reinitiate interrogation without counsel present, whether or not the accused has consulted with his attorney." 498 U.S. 146, 153 (1990).

These three cases, together, provide that a defendant who doesn't want to speak to the police without his attorney just needs to say so. The Supreme Court thus found *Jackson* "simply superfluous" and overruled it. *Montejo*, 556 U.S. at 795.

Here, Mr. Zhang waived his right to counsel during the interrogation. So, the issue is whether Mr. Zhang voluntarily, knowingly, and intelligently waived that right. In the video of this defendant's interrogation, the agents stop Mr. Zhang from admitting anything until they have read him his *Miranda* rights. *See* Gov. Ex. 1 at 7:30–8:25. This conversation is not confrontational in the least. The agents are polite and professional. One agent reads Mr. Zhang his *Miranda* rights aloud and then asks if he's willing to speak to the agents. *Id.* at 8:29–9:12. Mr. Zhang agrees. *Id.* The agents then have Mr. Zhang read the rights aloud himself. *Id.* at 9:12–9:32. Mr. Zhang does so and signs the waiver. *Id.* at 9:32–9:36. At no point does Mr. Zhang request an attorney or mention that he had retained counsel. The court has no trouble finding that Mr. Zhang voluntarily, knowingly, and intelligently waived his right to counsel.

Trying to avoid this outcome, Mr. Zhang's motion seeks to bring *Jackson*'s rule back from the dead, but in a slightly different form (something of a Franken*Jackson*, one might say). Mr. Zhang asserts that the circumstances of this case—asking him to waive his right to counsel after he'd retained counsel already, and counsel had negotiated with the government—render his *Miranda* waiver involuntary. He argues that the government "drained" his right to counsel "of meaning" because the government requested waiver "knowing he had already sought the assistance of counsel and had an attorney." Doc. 33 at 7–8. And he calls the government's tactics a "deliberately designed . . . approach to Dr. Zhang that ensured he would be isolated from his attorney and unable to obtain the help he needed in the moment when agents confronted him." *Id.* at 8.

7

Mr. Zhang's argument refuses to recognize an inconvenient but immutable truth: a represented defendant can talk to law-enforcement agents without his attorney present. *See Montejo*, 556 U.S. at 789 (rejecting as "off the mark" the idea "that no *represented* defendant can ever be approached by the State and asked to consent to interrogation" (emphasis in original)); *see also Maryland v. Shatzer*, 559 U.S. 98, 107–08 (2010) (setting bright-line rule that, when suspect invokes right to counsel in custodial interrogation, police may reapproach for *Miranda* waiver after 14 days). When police officers approach a represented defendant, he can elect to remain silent or ask for his attorney. Indeed, the FBI agents here explicitly advised Mr. Zhang of those rights. He simply chose to waive them. Mr. Zhang asserts that it would not have done him any good to invoke his right to counsel because the government expressly had disregarded that he had retained counsel. But that's Franken*Jackson* speaking—nothing in our laws prevented the FBI agents from approaching Mr. Zhang again, even though he had retained an attorney.[1]

To be sure, the government can't *deliberately elicit* statements from a defendant about a crime without defendant's counsel present. That is, law-enforcement officers can't sneak around trying to get a represented defendant to make incriminating statements without his lawyer present. Mr. Zhang compares his situation to this deliberately-eliciting-statement line of cases. The court provides a brief overview of these cases:

- The Sixth Amendment protects against admitting a defendant's incriminating statements secured when the government put a transmitter in a cooperator's car and listened to the cooperator's conversation with the defendant. *See Massiah v. United States*, 377 U.S. 201, 202–06 (1964).

---

[1] The Model Rules of Professional Conduct bar lawyers from communicating "about the subject of the representation with a person the lawyer knows to be represented by another lawyer . . . unless the lawyer has the consent of the other lawyer[.]" Model Rules of Pro. Conduct r. 4.2 (A.B.A. 2024). That rule does not change the outcome here because these rules govern lawyers, not FBI agents. And "the Constitution does not codify the ABA's Model Rules[.]" *Montejo*, 556 U.S. at 790.

8

- The Sixth Amendment protects against admitting a criminal defendant's statements at trial when the government asked a paid informant in the defendant's jail cellblock to be alert to any statements made by federal prisoners—but not to initiate any conversations. The government "intentionally creat[ed] a situation likely to induce [defendant] to make incriminating statements without the assistance of counsel[.]" *United States v. Henry*, 447 U.S. 264, 274–75 (1980).

- The Sixth Amendment protects against admitting defendant's incriminating statements made to a cooperator wearing a wire at a defense-strategy meeting, even though prosecutors told cooperator not to ask questions. The cooperator's remarks caused defendant to make those incriminating statements. *Moulton*, 474 U.S. at 164–66, 180.

- Under *Massiah*, the Sixth Amendment presumably protects against planting an informant in defendant's cell and asking the informant to listen for incriminating statements. *Kansas v. Ventris*, 556 U.S. 586, 589, 590 (2009).

*See* Doc. 33 at 6–7.

Those cases don't resemble this one. All of those cases involved an informant. Here, the FBI agents talked to Mr. Zhang themselves. And the agents provided Mr. Zhang a *Miranda* warning, explicitly advising him of his right to counsel during the interrogation. Nowhere in *Massiah*, *Henry*, *Moulton*, or *Ventris* did the defendant receive a *Miranda* warning. As the Supreme Court put it in *Montejo*, a *Miranda* warning "typically does the trick[.]" 556 U.S. at 786.

The agents thus did not violate their "affirmative obligation not to act in a manner that circumvents and thereby dilutes the protection afforded by the right to counsel." *Moulton*, 474 U.S. at 171.

### B.     Edwards

In his supplemental briefing following the hearing, Mr. Zhang tries to invoke a different approach. He disclaims *Montejo,* invokes *Edwards* instead, and asks the court to presume that Mr. Zhang's waiver was invalid. Doc. 38 at 6.

9

Recall that *Edwards* prevents the government from badgering a defendant into waiving his rights. 451 U.S. 477. In *Edwards*, the defendant asserted his right to counsel during an interrogation, and the officers had stopped their questioning. *Id.* at 478–79. But two different officers tried again, reapproaching the defendant the next morning. *Id.* This second set of officers read defendant his *Miranda* rights, yet they didn't provide defendant with counsel. *Id.* at 480. The Supreme Court held that, because the defendant had "expressed his desire to deal with the police only through counsel," the police could not interrogate him again "until counsel has been made available to him, unless the accused himself initiates further communication[.]" *Id.* at 484–85. Put simply, *Edwards* "preserve[s] the integrity of an accused's choice to communicate with police only through counsel by preventing police from badgering a defendant into waiving his previously asserted *Miranda* rights." *Shatzer*, 559 U.S. at 106 (quotation cleaned up).

In Mr. Zhang's view, *Edwards* "should prevent the Government from informing a suspect of his rights via target letter, giving up its ability to interact with the suspect without counsel, and then later changing its mind, and reapproaching the suspect, in custody, knowing he is represented, and requesting a waiver." Doc. 38 at 9. But no court ever has applied *Edwards* in this fashion. And this court declines to become the first.

Mr. Zhang's argument hinges on the 2020 target letter, not the 2024 indictment. Mr. Zhang believes that the government, by sending him a target letter and suggesting that he retain counsel, gave up any opportunity to speak with him directly. *Id.* at 3. Mr. Zhang cites no authority for this proposition. And the timing of the target letter vis-à-vis the indictment presents a problem for Mr. Zhang. The "right to counsel attaches once a prosecution is commenced." *United States v. Warrington*, 78 F.4th 1158, 1164 (10th Cir. 2023), *cert. denied*, 144 S. Ct. 2662 (2024) (quotation cleaned up). And Mr. Zhang's rights grounded in the Fifth Amendment—and

10

protected by *Edwards* and *Miranda*—apply "only in the context of custodial interrogation." *Montejo*, 556 U.S. at 795. Here, only one custodial interrogation ever occurred—the one in 2024 where Mr. Zhang signed a form waiving his *Miranda* rights. The government never interrogated Mr. Zhang while in custody in 2020, when it sent him the target letter. And the Supreme Court has "never held that a person can invoke his *Miranda* rights anticipatorily, in a context other than custodial interrogation." *McNeil v. Wisconsin*, 501 U.S. 171, 182 n.3 (1991) (quotation cleaned up). Put this all together: sending the target letter, suggesting Mr. Zhang retain counsel, and Mr. Zhang following its suggestion mean little to nothing. *See Montejo*, 556 U.S. at 797 ("What matters for *Miranda* and *Edwards* is what happens when the defendant is approached for interrogation, and (if he consents) what happens during the interrogation—not what happened at any preliminary hearing.").

Here, the agents triggered the Constitution just once—when they interrogated Mr. Zhang after the indictment. That's when *Edwards* kicked in. The earlier events simply don't matter to the analysis here. During the interrogation, Mr. Zhang never asserted his right to counsel. Indeed, he explicitly waived that right. And there's nothing here to suggest the government badgered Mr. Zhang into waiving his rights. The court thus rejects Mr. Zhang's *Edwards*-based argument. It also declines his request to suppress his statements to the agents.

### III.     Conclusion

The court finds that Mr. Zhang waived his rights knowingly, voluntarily, and intelligently. The court declines to suppress his statements.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Junjie Zhang's Motion to Suppress (Doc. 33) is denied.

**IT IS SO ORDERED.**

**Dated this 10th day of November, 2025, at Kansas City, Kansas.**

<u>s/ Daniel D. Crabtree</u>
**Daniel D. Crabtree**
**United States District Judge**
